IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GARY C. DUCKETT                                                                PLAINTIFF

V.                                          NO. 13-3047

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Gary C. Duckett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on February 11, 2011, alleging an inability to work since May 11, 2001, due to back injury (surgery 1987), neck pain, migraine (head injury 1995), breathing problems, and shoulder injury. (Tr. 126-127, 133-138, 152, 156). An administrative hearing was held on January 31, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 29-65).

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

By written decision dated February 17, 2012, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe: degenerative disc disease; left shoulder osteoarthritis; chronic obstructive pulmonary disease (COPD); headaches; and depression related to chronic pain. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> understand, remember, and carry out simple, routine, repetitive tasks; respond to usual work situations; and interact appropriately with supervisors, co-workers, and the general public. He is able to occasionally lift/carry 10 pounds, frequently lift/carry less, sit for 6 hours in an 8-hour workday, stand/walk for 2 hours in an 8-hour workday, and occasionally climb ramps and stairs, balance, crawl, kneel, crouch, and stoop. The claimant is unable to climb ladders, ropes, or scaffolds and cannot do overhead work bilaterally. He must avoid hazards including unprotected heights and heavy, moving machinery as well as concentrated exposure to pulmonary irritants.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that Plaintiff would not be able to perform his past relevant work, but there were other jobs Plaintiff could perform, such as surveillance system monitor, unskilled sedentary assembler, and unskilled sedentary machine tender. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 4, 2013. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3),

1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to fully and fairly develop the record; 2) The ALJ erred in his Step 2 findings; 3) The ALJ erred in his Step 3 findings; 4) The ALJ erred in his RFC determination; and 5) The ALJ erred in his Step 5 findings. (Doc. 9).

#### A.   Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ's mental RFC was based on no examining or treating source and that there is no record that Plaintiff's traumatic brain injury was considered, which was a result of the ALJ's failure to fully develop the record.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d

935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

  The Court first notes that Plaintiff did not list mental impairments when he filed for disability, which is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)(failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). In addition, it is noteworthy that during the DIB relevant time period (May 22, 2001 through December 31, 2004), on January 14, 2002, Dr. Jacob Rosenstein noted that Plaintiff was having a lot of depression secondary to his chronic pain, and was starting Plaintiff on Remeron. (Tr. 333). On October 18, 2002, Dr. Bryan S. Drazner reported there had been no evidence of depression. (Tr. 378). By June 13, 2003, Dr. John S. Townsend, IV, indicated that Plaintiff reported significant improvement in his depression and anxiety since

starting on Lexapro. (Tr. 485). In addition, Plaintiff has not presented any evidence showing that had the ALJ requested a psychological evaluation, the ALJ would have arrived at a different decision.

Based upon the foregoing, the Court finds there are existing medical sources which contain sufficient evidence to make a determination. Therefore, there is substantial evidence to support the fact that the ALJ did not fail to fully and fairly develop the record.

**B.   Step 2 Findings:**

Plaintiff argues that the ALJ erred in omitting Plaintiff's peripheral neuropathy, cervical radiculopathy and complex regional pain syndrome (CRPS) as severe, and that the ALJ failed to consider the combined effects of his impairments.

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen**,** 870 F.2d 1392, 1395 (8th Cri. 1989).

The ALJ noted that EMG/nerve conduction studies indicated possibility of a C-7 radiculopathy involving the right upper extremity, but no carpal or cubital tunnel syndrome was found. (Tr. 19). He also noted that subsequent nerve conduction/EMG studies in November of 2002 revealed probable entrapment or trauma of all four nerves at the right wrist and suggestion of a C3 or C4 radiculopathy on the left. (Tr. 20). The ALJ acknowledged that in March 2003,

-6-

Plaintiff had resection of clavicular fibrous nonunion, right clavicle, osteotomy of the right clavicle; and partial clavicectomy, right clavicle, and was thereafter treated with physical therapy, brachial plexus nerve blocks, and cervical sympathetic block. (Tr. 20). It is significant that there is no history of any other treatment from July 30, 2003 until July 19, 2010. Therefore, there is substantial evidence to support the fact that Plaintiff's neuropathy and radiculopathy and CRPS were not severe.

With respect to the ALJ's consideration of the combined effects of Plaintiff's impairments, the ALJ recognized that in making his RFC findings, he must consider "all of the claimant's impairments, including impairments that are not severe." (Tr. 14-15). In addition, in his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 14). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 14). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 14). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 16). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

Based upon the foregoing, the Court finds there is substantial evidence to support the

ALJ's Step 2 findings.

### C. Step 3 Findings:

Plaintiff contends that the ALJ erred in failing to find Plaintiff met or equaled Listing 1.02 in omitting all discussion of that listing or any express discussion of non-mental listings. He also argues that the ALJ failed to consider Plaintiff's combined effects of his impairments, such as Plaintiff's cervical radiculopathy and peripheral neuropathy combined with residuals of Plaintiff's several orthopaedic shoulder injury with nerve damage.

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010)(quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

Defendant argues that Plaintiff's clavicle injury does not meet Listing 1.02, which requires a major dysfunction of a joint, and that the collar bone is not a major joint. Defendant also argues that Listing 1.04 was not met because Plaintiff had only mild back symptoms. The Court agrees.

Subsequent to Plaintiff's surgical removal of his right clavicle, Plaintiff was seen by Dr. Karl D. Erwin on May 5, 2003. (Tr. 467). At that time, Plaintiff was reported as continuing to have persistent pain, but there was no evidence of anterior or posterior, or inferior instability. (Tr.

470). Dr. Erwin reported that Plaintiff was able to reach the opposite shoulder with the right hand; to reach the back of his head with the right hand; and placed his thumbs at the level of the waist with internal rotation and extension. (Tr. 470). Gross range of motion of the elbow, forearm, and wrist was normal. (Tr. 470). Shoulder girdle muscle strength testing and shoulder muscle strength testing were invalid, due to giving way. (Tr. 470). Muscle strength testing of the elbow, forearm and wrist was normal. (Tr. 470). Dr. Erwin noted that Plaintiff claimed he had difficulty using the right arm because he did not grip strong using the dynamometer because it induced pain, not because he could not grip the dynamometer. (Tr. 471). Dr. Erwin opined that Plaintiff had not reached his maximum medical improvement, but anticipated he would by May 15, 2003. (Tr. 472).

On July 16, 2003, Plaintiff was reported as having decreased range of motion in his right shoulder and was not able to abduct much beyond about 100 to 110 degrees without significant pain. Likewise, he was also decreased in terms of forward extension and in terms of internal and external rotation as well. There was slight intermittent crepitus on passive movement of the shoulder, but Dr. Townsend was not able to appreciate gross instability, popping, or locking on his assessment. (Tr. 491). On July 30, 2003, upon physical therapy, Plaintiff reported difficulties with sweeping, raking, and reported any activity that required repetitive upper extremity use was difficult. (Tr. 493). Plaintiff reported difficulty performing tasks that required cervical extension motions. (Tr. 493). He had restricted range of motion of his cervical/right shoulder. (Tr. 493). Listing 1.02 requires a major dysfunction of a joint and extreme loss of function of both upper extremities, and Plaintiff has failed to prove he met this listing. Once again, it is also significant that Plaintiff did not seek treatment after July 30, 2003 until July 19, 2010.

Based upon the foregoing, and for those reasons given in Defendant's well-reasoned brief, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's impairments do not meet or equal a listing.

### D.     RFC Determination:

Plaintiff argues that Plaintiff relied on Dr. Shannon Brownfield's opinion, due to the lack of a treating source evidence caused by Plaintiff's poverty, and that the ALJ omits Dr. Brownfield's requirement that there be limitations on prolonged positions and any limitation as to Plaintiff's migraines secondary to traumatic brain injury. Plaintiff also argues that it is troubling that the RFC lacks manipulative restrictions. Finally, Plaintiff argues that the ALJ found Plaintiff had a severe mental impairment of depression and was therefore required to base the RFC on medical evidence rather than personal opinion.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's

limitations and to determine how those limitations affect his RFC." Id.

Plaintiff reported smoking 1 ½ packs of cigarettes per day. Although he reports he indicated the lack of medical treatment was because he was unable to afford treatment, he was obviously able to afford to smoke 1 ½ packs of cigarettes per day. Further, Plaintiff's smoking habit discredits his disability allegations. See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).

Also significant is the fact that when Plaintiff received a right-brachial plexus nerve block by Dr. Drazner of NJZ Medical Associates, on July 30, 3002, Dr. Drazner's report indicated Plaintiff was to be seen in a follow-up exam. (Tr. 492). In addition, a report by the NJZ Therapy Evaluation and Care Plan dated July 30, 2003, indicated that Plaintiff appeared to be an appropriate candidate for therapy and that his exercise program would include strong stretching and strengthening component, and would emphasize active assistive and active range of motion exercises to enhance right shoulder functional mobility. (Tr. 493). It was recommended that Plaintiff undergo physical therapy, three times a week for three weeks. (Tr. 494). There are no records indicating Plaintiff presented himself for follow-up exam to Dr. Drazner or for physical therapy.

In a report dated July 19, 2010, by Arkansas Orthopedics & Sports Medicine, Plaintiff stated his neck and right upper extremity neurologic symptoms did not give him much problems at that time. (Tr. 280). It is also significant that in his undated Disability Report - Adult, Plaintiff reported that he was only taking Tylenol. (Tr. 159).

On March 15, 2011, Dr. Shannon H. Brownfield conducted a general physical

examination of Plaintiff. (Tr. 234). Upon examination, Dr. Brownfield noted that Plaintiff had normal range of motion of his elbows, wrists, hands, hips, knees, ankles, shoulder (right shoulder limited to 75%), cervical spine, and lumbar spine limited to 60 degrees, with 90 degrees being normal. (Tr. 236). Dr. Brownfield also noted that Plaintiff had no muscle spasms, weakness, or atrophy; and had no structural deformity, other than having his right clavicle removed. (Tr. 237). Plaintiff was noted as having a mild limp to the right, but he was able to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position without difficulty. (Tr. 237). Plaintiff had normal (5/5) grip strength, and he could hold a pen and write, pick up a coin, touch fingertips to palm, and oppose thumb to fingers. (Tr. 237). Dr. Brownfield diagnosed Plaintiff with COPD, lower back pain by history, shoulder pain caused by his clavicle injury, and migraines status post a head injury. (Tr. 238). Dr. Brownfield opined that Plaintiff had severe limitations in his right upper extremity; moderate to severe limitation in prolonged position, stooping, and lifting; and moderate limitation of exertion. (Tr. 238).

Approximately one month later, on April 13, 2011, non-examining consultant, Dr. Sharon Keith, completed a Physical RFC Assessment, wherein she found that Plaintiff would be able to perform light work, but could never climb ladder/rope/scaffolds and could occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 243-244). Dr. Keith found that Plaintiff was limited in reaching all directions (including overhead), and there should be no overhead reaching for the left upper extremity. (Tr. 245). She also found that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. and hazards (machinery, heights, etc. (Tr. 246).

The ALJ's RFC included a limitation that Plaintiff could perform sedentary work with

certain postural limitations, including not doing overhead work bilaterally. Based upon the foregoing, and for those reasons given in Defendant's well-reasoned brief, the Court believes there is substantial evidence to support the ALJ's RFC determination.

### E.     Step 5 Findings:

Plaintiff argues that the ALJ erred in his hypothetical question to the VE and in his use of the VE, noting that the VE stated he had no knowledge as to the job based for 2001 to 2004. At the hearing, Plaintiff's attorney asked the VE the following:

> Q: Do [sic] have an idea of the numbers of the jobs that would have been available between '01 and '04? I assume that the numbers you gave me were current?
>
> A: Yes. It would require some research. I don't have those accessible at hand.
>
> Q: Do you have an belief as to whether they would be more or less back the, or you'd need to do the research?
>
> A. From what time?
>
> Q. '01 to '04.
>
> A: I don't have anything objective to answer that with. Anything I gave you would be speculative, really.

(Tr. 63).

Defendant cites <u>Davis v. Astrue</u>, 647 F.Supp.2sd 598 (E.D. N.C. 2009), for the proposition that any number of jobs available in 2001 and 2004 are irrelevant and not determinative of whether there were jobs that existed in the national economy on the date of the hearing. In addition, Plaintiff stopped seeking medical treatment after July 30, 2003, until 2010. The Court believes the ALJ made a determination as to Plaintiff's disability status during the

-13-

entire relevant period from the alleged onset date of May 11, 2001, through the date of the ALJ's decision, February 17, 2012.

The hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as surveillance system monitor, unskilled sedentary assembler, and unskilled sedentary machine tender.. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

Accordingly, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff could perform jobs such as surveillance system monitor, unskilled sedentary assembler, and unskilled sedentary machine tender.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 11th day of July, 2014.

*/s/ Erin L. Setter*
HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE

-14-

AO72A
(Rev. 8/82)